UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY; SAFECO INSURANCE COMPANY OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL E. HIMICK and KAREN A. HIMICK as individuals; DANIEL E. HIMICK and KAREN A. HIMICK as trustees of the HIMICK FAMILY TRUST; and DOES 1–50, inclusive,<br><br>Defendants. | No. 2:15-cv-00683-TLN-AC<br><br>**ORDER** |

The matter is before the Court on Defendants' motion to dismiss and motion for a more definite statement (ECF No. 5) and Plaintiffs' application for right to attach order and order for issuance of writ of attachment (ECF No. 7). For the reasons stated below, the motion to dismiss is DENIED and the Court hereby sets a date for hearing on the writ of attachment.

**I.   Factual Allegations**

Liberty Mutual Insurance Company and Safeco Insurance Company of America ("Plaintiffs") are sureties doing business in California. C.C. Myers, Inc. ("CC Myers") is a construction company in California that regularly obtains surety bonds in connection with its work. Defendant Daniel Himick was the President of CC Myers from about January 2004

1  through April 2014, and was CEO of CC Myers from April 2014 to March 30, 2015.  (Pl.'s
2  Opp.'n to Mot. Dism., ECC No. 13 at 3.)
3       On or about January 25, 2002, CC Myers, among others, executed a General Indemnity
4  Agreement ("GIA") in favor of Plaintiffs for bonds issued to CC Meyers, among others.
5  Defendants were not signatories to the January 25, 2002, GIA.  (Compl., ECF No. 1 ¶ 11.)
6       On or about February 3, 2009, CC Myers, among others, executed a General Indemnity
7  Agreement in favor of Plaintiffs for bonds issued to CC Meyers, among others.  The February 3,
8  2009, GIA states that it is a renewal and restatement of, and supplement to, the January 25, 2002
9  GIA.  (Compl. ¶ 12.)
10       On or about February 3, 2009, Defendants Daniel and Karen Himick executed signature
11  addendums to the February 3, 2009, GIA, which resulted in their being added as Indemnitors to
12  that GIA, and exempting their primary residence in Meadow Vista, California from recovery by
13  Plaintiffs.  (Compl. ¶¶ 13–14.)
14       On or about June 5, 2009, CC Myers, among others, executed a General Indemnity
15  Agreement in favor of Plaintiffs for bonds issued to CC Myers, among others.  The June 5, 2009
16  GIA states it is a renewal and restatement of, and supplement to, the January 25, 2002 GIA.
17  (Compl. ¶ 15.)
18       On or about June 9, 2009, Defendants Daniel and Karen Himick, individually and as
19  trustees of the Himick Family Trust, executed a signature addendum to the June 5, 2009, GIA,
20  which resulted in their being added as indemnitors to that GIA.  That signature addendum
21  exempted the Himick's primary residence in Meadow Vista, California.  (Compl. ¶ 16.)
22       Under the terms of the February 3, 2009, and June 5, 2009, GIAs (collectively the
23  "GIAs"), indemnitors are jointly and severally obligated to indemnify Plaintiffs from all loss and
24  expense incurred in connection with Plaintiffs' issuance of any bonds on behalf of CC Myers.
25  (Compl. ¶ 17.)
26       Per CC Myers' request, and in reliance upon the terms and execution of the GIAs,
27  Plaintiffs issued performance bonds and payment bonds to CC Myers in connection with its
28  construction work on various projects.  (Compl. ¶ 18.)  To the Complaint, Plaintiffs attach a

"Linecard Analysis Report" for CC Myers, showing a list of open bonds as of October 28, 2014. (Compl., Ex. G.)

By letter dated September 8, 2014, Defendants served Plaintiffs with a notice of termination of disability pursuant to the "Termination" clauses in the GIAs, and therein requested July 1, 2014, as the effective date of termination. (Compl. ¶ 19.)

On October 10, 2014, CC Myers requested in writing that Plaintiffs provide financial assistance in the amount of $12 million. (Compl. ¶ 20.) Plaintiffs have provided financial assistance to CC Myers in connection with the bonded projects. Plaintiffs have incurred fees and expenses, including attorney and consultant fees, in connection with investigating and/or defending claims on the bonds and otherwise attempting to mitigate the issues related to various unfinished bonded projects. Plaintiffs have incurred losses and expenses in excess of $8 million. (Compl. ¶ 21.)

By letter dated December 9, 2014, Plaintiffs caused to be sent to Defendants a collateral demand letter demanding, pursuant to the GIAs, that Defendants provide cash collateral of $8 million to Plaintiffs by January 9, 2015, to cover their anticipated losses on the bonds, with a reservation of rights to increase the demand as additional facts became known. On Defendants' request, Plaintiffs extended the January 9, 2015, deadline to February 2, 2015. (Compl. ¶ 22.)

Defendants have failed to comply with Plaintiffs' demands as set forth in the collateral demand letter. In or about January 2015, Defendants informed Plaintiffs that they intended to use a significant amount of their cash to renovate residential property they own in Mexico. (Compl. ¶¶ 23–24.)

Pursuant to these allegations, the Complaint[1] lists causes of action for: 1) breach of contract relative to the GIAs; 2) declaratory relief regarding the parties' rights and obligations under the GIAs; 3) injunctive relief for anticipated breach of the GIAs (quia timet); and 4) specific performance under the GIAs.

//

---

[1] The Complaint was filed on March 26, 2015. (ECF No. 1.) The Motion to Dismiss/Motion for More Definite Statement was filed on June 8, 2015. (ECF No. 5.) The Application for Right to Attach Order and Order for Issuance of Writ of Attachment was filed on July 10, 2015. (ECF No. 7.)

**II.     Defendants' Motion to Dismiss and Motion for More Definite Statement**

Defendants state that the Complaint contains untrue allegations, pled to "harass, financially burden, and annoy Defendants in an effort to secure their signature on agreements destructive to their livelihood and retirement." (Mot. Dism., ECF No. 5 at 3.) Defendants submit, among other things: Plaintiff Liberty Mutual Insurance Co. ("Liberty") is not a party to any of the GIAs. Plaintiffs have sustained no losses in connection with surety bonds it issued on behalf of CC Myers. Plaintiff Liberty made a loan to CC Myers, which is not due and payable until December 31, 2016, and Defendants are not signatories to the promissory note that documents that loan. The list of bonded projects attached to the Complaint (Compl., Ex. G) misrepresents projects it bonded and projects which Defendants would be obligated to indemnify. (Mot. Dism. at 3–4.)

With this context in mind, Defendants request that the Court dismiss Plaintiff Liberty with prejudice under Fed. R. Civ. P. 12(b)(6), and order Plaintiff Safeco to submit a more definite statement under Fed. R. Civ. P. 12(e).

First, with respect to dismissal under Rule 12(b)(6), Defendants argue that Liberty is not mentioned in the GIAs, is not a party to those agreements, and was never intended to be a beneficiary of the GIAs. Defendants also argue there is no provision in the GIAs that permits Safeco to assign its rights to a non-Safeco entity. (Mot. Dism. at 7–8.)

Plaintiffs respond that the indemnity and collateral obligations under the GIAs refer to the "Surety" that issues the bond. The language from the attached GIAs defines "Surety" as "…any person or company joining with any of the aforesaid companies [e.g. Safeco] in executing any Bond, executing any Bond at their request or providing reinsurance to them…."[2] (Pl.'s Opp.'n at 4; Compl., Ex.'s B, F.) Plaintiffs also clarify: In September 2008, Liberty acquired Safeco. In February 2009, Safeco sent a written request to Liberty requesting that Liberty execute bonds on behalf of Plaintiff Safeco as needed. Safeco and Liberty issued performance and payments bonds to CC Meyers in connection with its construction work on various projects. (Pl.'s Opp.'n at 4.)

---

[2] "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." Cal. Civ. Code § 2787.

Based on the foregoing, Plaintiffs have pleaded relevant facts to withstand dismissal – essentially that Liberty is a surety that has issued bonds to CC Myers and Defendants have refused to comply with the terms of the GIAs which encompass Liberty. Defendants attach copies of the GIAs and the signature addendums, a list of relevant bonded projects, the September 2014 termination letter sent by Defendants, the written request from CC Meyers seeking $12 million in financial assistance, and Plaintiffs' demand letter seeking $8 million. (Compl., Ex.'s A–J.) While there is a dispute about the merits of the foregoing allegations, Plaintiffs have raised a plausible claim to relief and provide fair notice to Defendants of what the charges are. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Therefore, the motion to dismiss Plaintiff Liberty from this action is DENIED.

With respect to Defendants' request for a more definite statement: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996).

Defendant seeks a more definite statement particularly in light of Plaintiffs' request for at least $8 million damages. (Mot. Dism. at 8.) Defendants state that an amended complaint will cure vagaries in the allegations including, among others, the nature of CC Myers' "defaults" and their connection to damages of $8 million, claims of "anticipated" losses, and allegations that Defendants "have exhibited a willingness to evade their obligations." (Mot. Dism. at 8–10; Compl. ¶¶ 26, 22, 36.)

Plaintiffs oppose the request. Specifically relative to the $8 million damages figure, Plaintiffs allege in the Complaint that CC Myers requested financial assistance in the amount of $12 million on October 10, 2014. (Compl. ¶ 20.) A copy of that written request is attached to the Complaint. (Compl., Ex. I.) Plaintiffs also allege that their losses and expenses relative to bonded projects done by CC Myers are over $8 million, and have attached a list of relevant

bonded projects. (Compl. ¶¶ 21–22 & Ex. G.)

Defendants dispute the truth of these allegations, but the Complaint gives Defendants notice of the substance of the claim. *Stout*, 946 F. Supp. at 804; *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994); *U.S. E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012). The attached exhibits (Compl., Ex.'s A–J) contain much of the relevant contractual language. Defendants have also deposed Plaintiffs' Surety Claims Counsel regarding this matter. (Grossage Decl., ECF No. 12-3.) It is unlikely that Defendants are unable to understand the claims against them such that a more definite statement is required. Therefore, the motion for a more definite statement is DENIED.

### III. Plaintiffs' Application for Writ of Attachment

Plaintiffs seek a prejudgment writ of attachment of various items of Defendants' property, including real property, accounts receivable, equipment, inventory, final money judgments, and securities. (ECF No. 7-2 at 20.)

A writ of attachment is evaluated pursuant to state law. Fed. R. Civ. P. 64(a) and (b) ("At the commencement of and throughout an action, every remedy [including attachment] is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment"). The parties have briefed whether a writ of attachment should issue. (ECF Nos. 7, 12, 14.) Under California law a hearing is required prior to issuing a writ of attachment. *See* California Code of Civil Procedure § 484.040 ("No order or writ [of attachment] shall be issued ... except after a hearing"); *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1056, 1062 n. 3 (C.D. Cal. 2009); *Hobbes v. Weiss*, 73 Cal. App. 4th 76 (1999).

The Court hereby sets a hearing for May 5, 2016 at 2 PM. If this date is unavailable for the parties, they should confer and propose to the Court an alternative date.

### IV. Conclusion

For the stated reasons, Defendants' motion to dismiss and for a more definite statement (ECF No. 5) is DENIED. The hearing date for Plaintiffs' application for a writ of attachment is hereby set for May 5, 2016 at 2 PM.

6

Dated: March 22, 2016

Troy L. Nunley
United States District Judge